Russell DePETRILLO et al.

v.

Norman LEPORE a/k/a Lepore Farm.

No. 2004–122–Appeal.

Supreme Court of Rhode Island.

April 27, 2005.

John T. Longo, Providence, for Plaintiff.

Paul L. Foster, Lincoln, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiffs, Russell and Donna DePetrillo (plaintiffs or DePetrillos), ask this Court to rule that a real estate purchase and sale agreement is specific enough for specific performance. They appeal from the Superior Court's dismissal in favor of the defendant, Norman Lepore a/k/a Lepore Farm (defendant or Lepore), after the court determined that it would not order specific performance because the contract was not sufficiently clear, definite, certain, and complete as to its essential terms.

This matter came before the Supreme Court for oral argument on March 8, 2005, pursuant to an order directing the parties to appear and show cause why the issues

raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons stated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The parties entered into an agreement dated June 4, 2001, in which plaintiffs agreed to purchase a parcel of real estate owned by defendant and known as Lepore Farm. The property's address is 545 Angell Road, Lincoln, Rhode Island, but part of the land also is in North Providence. The plaintiffs promised to pay $2,000,000 in exchange for the property, and they provided a deposit of $5,000 at the time of signing. In relevant part, the agreement stated:

"For Deposit to purchase the property at:

545 Angell Road, Lincoln, RI 02865

With land both in North Providence and Lincoln, RI

(This division of land comprises Lot 7 AP 42 approx. 13.18 acres in the town of Lincoln also Lot 841 on AP 226 approx. 18 acres in the town of North Providence)

This division of land will not include the old farmhouse and approx. ½ acre of land that it sits on. True acres will be determined by new perimeter land survey."

The agreement contained six additional terms and conditions, including "good and sufficient warranty deed to be delivered on or before 6 months," and that "90 to 120 days will be needed by buyers for engineering and survey." The defendant later asked to keep a garage in addition to the reserved farmhouse parcel, and plaintiffs agreed. The parties later discovered that Lincoln's zoning regulations required minimum one-acre lots. Again, plaintiffs agreed to let defendant keep one acre to satisfy the minimum lot size.

The parties' agreement to exclude the reserved parcel from the transfer required recording a new plat in Lincoln's land evidence records. Nonetheless, neither party filed such a plat before the six-month executory period expired; each party apparently believed it was the other's responsibility to subdivide the parcel. Because neither party took action, no closing took place.

█ The plaintiffs subsequently commenced a lawsuit seeking damages for breach of contract and requesting specific performance. Lepore counterclaimed, alleging fraud, fraud in the inducement, breach of contract, slander of title, and abuse of process.[1] The plaintiffs also filed a motion *in limine* in which they suggested the court find the contract clear and unambiguous. Instead, the trial justice found the agreement to be in "complete silence as to who may have, the buyer or the seller, had the responsibility to make the appropriate subdivision." Accordingly, a jury was empaneled and the case proceeded to trial.[2]

---

1. Lepore later amended his counterclaim to include Joseph Iaciofano (Iaciofano) in his capacity as plaintiffs' partner. The plaintiffs had a separate agreement with Iaciofano to provide the money necessary to close on the sale; their answer to the amended counterclaim admits they are in partnership related to the purchase of the property at issue.

2. Mindful that the question of whether to grant specific performance is equitable in nature, we can only presume that the jury was empaneled to pass on the ultimate issue of breach of contract, and other claims.

■ Upon motion after the close of plaintiffs' case, the trial justice declined to grant specific performance.[3] He found specific performance inappropriate because there was significant doubt as to exactly what the reserved parcel should look like and which party was required to perform the subdivision. After the trial justice refused to grant specific performance, plaintiffs voluntarily dismissed, with prejudice, their claim for breach of contract. The defendant also stipulated to a dismissal of his counterclaims.[4] The parties' stipulations were incorporated into the trial justice's subsequent judgment. Additional facts will be added below as warranted by the analysis.

## II

### Discussion

■ The remedy of specific performance is not a right, but instead "rests within the sound discretion of the trial justice." *Thompson v. McCann,* 762 A.2d 432, 436 (R.I.2000) (quoting *Eastern Motor Inns, Inc. v. Ricci,* 565 A.2d 1265, 1269 (R.I.1989)). "[T]his Court will not disturb a trial justice's ruling on a specific performance claim unless the appellant demonstrates an abuse of discretion or error of law." *Id.*

■ "[T]he essential terms of the contract must be clear, definite, certain, and complete" before a court can properly award specific performance of a real estate

contract. *Caito v. Juarez,* 795 A.2d 533, 536 (R.I.2002) (quoting 71 Am. Jur. 2d *Specific Performance* § 34 (2001)). "It must be sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties." *St. Lawrence v. Reed,* 74 R.I. 353, 357, 60 A.2d 734, 736 (1948) (quoting 49 Am. Jur. *Specific Performance* § 22 (1943)). Finally, the party seeking specific performance must demonstrate that he or she was "'ready, able and willing to perform.'" *Griffin v. Zapata,* 570 A.2d 659, 662 (R.I.1990).

On appeal, plaintiffs argue that the trial justice erred in finding that the contract did not meet the above requirements. They disagree with the trial justice's finding that the contract lacked essential terms. The plaintiffs argue that creating lot lines is a ministerial act. In any case, plaintiffs maintain that the lot lines are not essential because, since the reserved parcel would include the existing farmhouse and garage, the rough lot parameters will be governed by the Town of Lincoln's zoning regulations. Furthermore, plaintiffs argue that they will accept and pay for the recording of any legal configuration.

In light of the highly factual nature of a specific performance inquiry, we turn to case law for instruction. In *Caito,* 795

3. We also pause to clarify a procedural anomaly in this case. Although the parties styled defendant's motion as one for "judgment as a matter of law" pursuant to Rule 50(a)(1) of the Superior Court Rules of Civil Procedure, that rule is, obviously, inapplicable to an equitable, nonjury issue such as specific performance. We therefore treat defendant's motion as a motion to dismiss pursuant to Rule 52(c) of the Superior Court Rules of Civil Procedure. It should be noted that Rule 52(c) provides the proper procedural mechanism

analogous to Rule 50(a) for equitable issues, such as specific performance.

4. Specifically, defendant agreed to an order dismissing his counterclaims, without prejudice, pending the outcome of the present appeal. The order further provided, however, that in the event plaintiffs' appeal was denied, then the dismissal of defendant's counterclaims would be with prejudice.

A.2d at 534–36, a provision of the real estate contract called for partially financing the purchase price with a promissory note secured by a first mortgage on the property, the terms of which were not included, but were incorporated by reference to a separate memorandum. Because no memorandum ever was attached to the agreement, we held that the contract was uncertain as to essential terms, and, therefore, not susceptible to specific performance.

An Illinois case, *McDaniel v. Silvernail*, 37 Ill.App.3d 884, 346 N.E.2d 382, 384 (1976), is particularly instructive. The facts of *McDaniel* are analogous to the present situation: whereas in *McDaniel* the tract for sale was carved out of a larger parcel owned by the seller, here, the defendant sought to reserve for himself a small part of the larger parcel. The *McDaniel* agreement read:

"2/14/72

I agree to sell to George McDaniel the house on R.R.2, in which he now lives, plus two acres, xxx for $6000. to be agreed.

    Alfreda Silvernail

Rent of $70 monthly to be applied as purchase price—less taxes & Ins." *Id.*

Based on the above contract language, the *McDaniel* court refused to grant specific performance because it was impossible to tell exactly what part of the seller's larger tract constituted the two acres she intended to convey. This was so even though, like the present case, the two acres would have surrounded an existing house that was also to be conveyed. *Id.* at 384–85.

In this case, the trial justice below stressed that the agreement was utterly silent not just as to who was responsible for doing the subdivision, but as to the exact amount of land required for defendant's reserved parcel. The trial justice highlighted certain other pertinent facts:

"Mrs. DePetrillo testified on cross-examination that when she, at least, became aware that the minimum required lot size in Lincoln was one acre, that at least in her mind she agreed that Mr. Lepore could have one acre, or whatever it took. Mr. Iaciofano testified that * * * he believed that the Town of Lincoln permitted one half acre, but realized later that it required a minimum of one acre. Mr. Iaciofano testified that in reading the contract, he could not determine who was responsible for cutting out the farmhouse * * *.

"Mr. Lepore testified it was his belief that he had no obligation to cut out the farmhouse. According to his testimony, which the Court must accept as being true, Mr. DePetrillo said he would do it. We've heard testimony * * * that Mr. Lepore asked that more buildings on the Lepore Farm be retained by him—barn, garage, and other things—and that the DePetrillos were in agreement. There's also been testimony * * * that you could, in essence, shift or lay the lines, configure the lines in such a manner as to accomplish what the parties believed that they had agreed to."

In concluding, the trial justice stated "all that points to * * * lack of precision." The terms "at least as [they] pertain[ ] to the division of land, [were] not clear, [they were] not definite, certain or complete. It leaves in this Court's mind a reasonable doubt as to exactly what * * * would be required * * *: draw the line here, or draw the line there. Include this, include that. It's inadequate."

We agree. Even if we determined which party had the obligation to draw the subdivision, the contract is still inadequate because there is significant doubt as to exactly what the reserved parcel should look like. We are especially reluctant to

approve the equitable remedy of specific performance when it may require supervision of recalcitrant parties in future squabbles over subdivision minutiae, such as where the lot lines should fall. Given these considerations, and our deferential standard of review, we hold that the trial justice did not abuse his discretion in refusing to enter this equitable quagmire.

We pause to note that plaintiffs' citations to certain of this Court's other cases, *Vigneaux v. Carriere*, 845 A.2d 304, 307 (R.I.2004) (affirming grant of specific performance despite the fact that the agreement failed to specify a closing date or the precise payment terms) and *Gill v. Wagner*, 813 A.2d 959, 963 (R.I.2002) (holding that specific performance of a valid purchase and sales agreement was proper despite the fact that doing so required seller to clear a cloud on the title), are without merit and do not support the plaintiffs' argument for specific performance. Unlike the present case, there was no question what performance was required in *Vigneaux*. Likewise, there was no question what equitable relief the *Gill* buyers sought. These cases are, therefore, readily distinguishable from the case at hand in which the courts are being asked to don our hard hats and survey instruments—or at least to supervise the parties in doing so—even before any conveyance can be ordered.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record in this case shall be remanded to the Superior Court.