Judith E. BUCKLIN

v.

Frances MORELLI, in her capacity
as executrix of the Estate of
Ralph DiCostanzo.

No. 2005–282–Appeal.

Supreme Court of Rhode Island.

Jan. 8, 2007.

James E. Kelleher, Warwick, for Plaintiff.

Keven A. McKenna, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## O P I N I O N

Justice ROBINSON for the Court.

On May 25, 2004, a justice of the Superior Court issued a bench decision in favor of the plaintiff, Judith E. Bucklin, who had sought the remedy of specific performance in connection with a purchase and sales agreement regarding a certain parcel of real property located in Warwick. The defendant, Frances Morelli, filed a timely notice of appeal from that judgment.

On appeal, defendant contends (1) that the trial justice erred in granting plaintiff's prayer for specific performance and (2) that the trial justice abused his discretion in admitting the testimony of a particular expert witness.

This case came before this Court on October 31, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. Having considered the record, the memoranda filed by the parties, and the oral arguments, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

### Facts and Travel

On July 7, 2000, Ms. Morelli and Ms. Bucklin entered into a purchase and sales agreement, whereby Ms. Morelli (as executrix of her father's estate) agreed to sell Ms. Bucklin a parcel of real property located at 126 Lakedell Drive in Warwick for $77,000. Paragraph four of the agreement reads in pertinent part: "Closing is to be held on September 01, 2000 at 10:00 A.M. at the office of the Registry of Deeds in which the deed should by law be recorded or at such other time and place as may be agreed to by the parties." Significantly, the agreement does *not* contain a "time is of the essence" provision.

Paragraph ten of the purchase and sales agreement provides in pertinent part: "If Seller is unable to [convey good, clear, insurable, and marketable title], Buyer shall have the option to: (a) accept such title as Seller is able to convey without abatement or reduction of the Purchase Price, or (b) cancel this Agreement and receive a return of all Deposits."

The purchase and sales agreement requires, in paragraph twenty-four, approval of the Probate Court as an additional condition to the sale. Paragraph twenty-eight of the agreement reads: "We, the parties hereto, each declare that this instrument contains the entire agreement between us, subject to no understandings, conditions, or representations other than those ex-

pressly stated herein. This Agreement may not be changed, modified, or amended in whole or in part except in writing, signed by all parties."

Ms. Bucklin brought this action for specific performance on June 11, 2001. A bench trial was conducted on March 9 and March 11, 2004, and a bench decision was rendered in favor of plaintiff on May 25, 2004. We set forth below the most significant testimony given by the several witnesses who testified during the two-day trial.

Ms. Bucklin testified that, in view of the purchase and sales agreement's provision concerning title, she hired Attorney Harry Cesario to conduct a title examination with respect to the Lakedell Drive property. The title examination, which was conducted in July of 2000, revealed the presence of several liens on the property. Attorney Cesario testified that he sent a letter to Attorney Robert Natal, Ms. Morelli's attorney, to notify him of the presence of the liens. Attorney Cesario further testified that the two attorneys spoke frequently about the lien issue and how it might be resolved between July 20 and September 1, 2000, as well as after September 1, 2000. He also testified that Attorney Natal had advised him that he was in the process of resolving the lack of marketable title caused by the presence of the liens. Attorney Cesario could not specifically recall discussing with Attorney Natal whether or not the closing would occur on September 1, 2000, but he nonetheless stated, "I'm sure we did." Attorney Cesario admitted that there was no written extension of the September 1, 2000 date that was specified in the purchase and sales agreement, but he stated that he and Attorney Natal had discussed the fact that it would not be possible for the closing to occur on September 1, 2000. According to Attorney Cesario, communications between him and Attorney Natal ceased at some point.

Ms. Bucklin testified that the purchase and sales agreement provided for a closing on September 1, 2000 but that the closing did not occur on that date because Ms. Morelli required more time to have the liens on the property removed. Ms. Bucklin also testified that, although she knew about the liens on the property before September 1, 2000 and knew about her rights under paragraph ten of the purchase and sales agreement, she opted not to exercise those rights on or before September 1, 2000 since she wanted to allow Ms. Morelli's lawyer more time to resolve the marketable title problem. Ms. Bucklin admitted to sending Ms. Morelli a letter on August 30, 2000, requesting that she extend the time for the closing until September 15, 2000, but she testified that her purpose in doing so was to communicate to Ms. Morelli her desire to continue with the purchase despite the fact that more time would be needed before a closing would take place.

Ms. Bucklin also testified that she believed that September 1, 2000 was a "target" closing date and that it was further her belief that it is customary to conduct a real estate closing after the closing date specified in the purchase and sales agreement. Ms. Bucklin stated that the purchase and sales agreement contained no "time is of the essence" provision—a fact which she understood to mean that there was flexibility in the closing date.

Ms. Bucklin further testified that she indicated to her attorney, Mr. Cesario, her desire to exercise her option under paragraph ten. According to Ms. Bucklin, although she did not make a written offer to exercise that option between September 1 and September 15, 2000, she did do so at some point between September 15 and October 1, 2000. Ms. Bucklin also testified

that her lawyer sent a letter on her behalf, expressing Ms. Bucklin's desire to buy the property in its current state in mid-October of 2000.[1]

Attorney Cesario testified that, in his October 16, 2000 letter, he indicated that Ms. Bucklin wished to exercise her option under paragraph ten of the purchase and sales agreement. According to Attorney Cesario, he asked Attorney Natal to discuss with Ms. Morelli both the fact that Ms. Bucklin desired to exercise the option and the need to establish a new closing date. Attorney Cesario also stated that his letter advised Attorney Natal that Ms. Bucklin would seek specific performance if Ms. Morelli did not comply. Attorney Cesario further testified that Attorney Natal never responded in any manner to that letter.

Ms. Bucklin testified that neither Ms. Morelli nor her realtor communicated to Ms. Bucklin any desire to terminate the purchase and sales agreement prior to October 16, 2000. Attorney Cesario also testified to the same effect. In fact, according to Ms. Bucklin, Ms. Morelli's attorney ceased all communication with Ms. Bucklin's attorney around mid-October of 2000.

In addition, Ms. Bucklin testified that she had made a deposit on the property and that that deposit was still being held in escrow at the time of trial. She admitted that, at some point in time, her realtor advised her that Ms. Morelli's realtor wanted to return the deposit, but Ms. Bucklin refused to accept the tendered check. Ms. Bucklin also testified that she had planned to pay the rest of the purchase price with money that she had in certain banks and that at no time between the execution of the purchase and sales agreement on July 7, 2000 and the sending of her attorney's letter on October 16, 2000 did she lack sufficient funds in those banks to cover the remaining balance on the property.

Ms. Bucklin also testified that she sent a letter to Ms. Morelli on November 30, 2000, expressing her desire to buy the property without clear title.[2] According to Ms. Bucklin's testimony, she also sent to Ms. Morelli, by certified mail in December, a letter referencing the November 30, 2000 letter.

Ms. Morelli testified that the closing did not occur on September 1, 2000 because the title was defective. According to Ms. Morelli, prior to September 1, 2000, she

---

1. A copy of this letter, dated October 16, 2000, is appended to this opinion.

2. Ms. Bucklin's letter of November 30, 2000 to Ms. Morelli reads in pertinent part:
   "I am writing to ask for your help. Five months ago as I was looking for a house we could afford to help our son buy, we were excited to find 126 Lakedell Drive. You and I signed the sales agreement, and details seemed to be progressing for the sale to take place in late September. All of a sudden, communication between us stopped. We have not been able to find out what the problem is.
   "We and our son would still like very much to buy the Lakedell house. Could you help us understand what is happening? We are peace-loving people who want you to be as happy about the sale of 126 Lakedell as we would be about buying it. We are willing, as we said before, to buy the property without inspections and without a clear title. We are willing to sign any papers that would help you feel at ease.
   "I know this must be weighing on your mind as it is ours. I hope that you will find it in your heart to help us understand what has happened to break down the process between us. Won't you please contact us? If it would help for us to sit down together, I would be glad to. If you really still want to sell the house, I'm sure that we could come to a mutually agreeable compromise. Again, we would like to do whatever we could to be helpful, but we need your help to know what that might be."

was not asked to sign an agreement postponing the closing date, and she did not know that the closing was not going to take place on September 1, 2000 until after that date. Ms. Morelli admitted that she did not need to obtain probate court approval before selling the property because her father had given her the authority to do so in his will. According to Ms. Morelli, she instructed her real estate agent to return the deposit money to Ms. Bucklin in September of 2000.

Ms. Morelli admitted that she did not personally advise Ms. Bucklin, Ms. Bucklin's realtor, or Ms. Bucklin's attorney that she had decided at some point after September 1, 2000 that the deal was over. She also conceded that she did not plan to present any witnesses who would testify that they had communicated to Ms. Bucklin, Ms. Bucklin's realtor, or Ms. Bucklin's attorney that the deal was over. She also testified that she had never seen a document that indicated that the deal was over.

Ms. Morelli testified that she was not informed that Ms. Bucklin expressed any interest in buying the property without clear title at any time in September or October of 2000 and that there were no discussions about amending the agreement until October 16, 2000. Ms. Morelli testified that she understood the letter from Ms. Bucklin's attorney dated October 16, 2000 to be a request to negotiate a new agreement. Ms. Morelli also testified that, despite the provisions of paragraph ten of the agreement and the lawyer's letter of October 16 indicating that Ms. Bucklin wanted to exercise her rights under paragraph ten, she still thought that she could

not sell the property; Ms. Morelli stated that it was her understanding that before she could sell the property, she would have had to go to court to resolve the Sherman mortgage issue.[3]

Ms. Morelli admitted that she received and understood Ms. Bucklin's letter of November 30, 2000, which reads in part: "We are willing, as we said before, to buy the property without inspections and without a clear title." She further stated that she chose not to respond to that letter. According to Ms. Morelli, she thought that by the requests contained in that letter Ms. Bucklin was attempting to form a new agreement. Ms. Morelli testified that she was not attempting to delay the closing for the purpose of selling the property to someone else.

On March 9 and 11, 2004, a bench trial was held, and the trial justice entered a judgment in Ms. Bucklin's favor on May 25, 2004.[4] Ms. Morelli filed a timely notice of appeal.

## Standard of Review

The trial justice is vested with broad discretion in deciding whether or not to grant a request for specific performance; such a decision will not be overturned on appeal unless it was clearly wrong. *See Eastern Motor Inns, Inc. v. Ricci*, 565 A.2d 1265, 1269 (R.I.1989) ("The grant of a request for specific performance is not a matter of right but rests within the sound discretion of the trial justice. * * * On appeal this court will not disturb a trial justice's ruling on a specific performance claim unless the appellant demonstrates an

---

**3.** The Sherman mortgage was one of the title defects revealed by the title examination of the Lakedell Drive property. Ms. Morelli testified that she thought that she would have to go to court to resolve this issue because she did not know how much she owed on the mortgage.

**4.** There were numerous post-trial filings in this case, but none of them has any bearing on the issues before us on appeal.

abuse of discretion or error of law on the part of the trial justice."); *see also Fracassa v. Doris*, 876 A.2d 506, 509 (R.I.2005); *DePetrillo v. Lepore*, 871 A.2d 907, 909 (R.I.2005); *Lajayi v. Fafiyebi*, 860 A.2d 680, 686 (R.I.2004); *Thompson v. McCann*, 762 A.2d 432, 436 (R.I.2000).

■ Similarly, with respect to defendant's second argument on appeal, the decision as to whether or not to admit the testimony of a particular witness as expert testimony is a matter confided to the sound discretion of the trial justice; this Court will not reverse such a decision absent an abuse of discretion. *See Gallucci v. Humbyrd*, 709 A.2d 1059, 1064 (R.I. 1998) ("This court will not disturb a trial justice's ruling on the admissibility of expert testimony absent an abuse of discretion."); *see also Beaton v. Malouin*, 845 A.2d 298, 301 (R.I.2004); *Skene v. Beland*, 824 A.2d 489, 492 (R.I.2003); *Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1061 (R.I.2001).

## Analysis

## I

### Request for Specific Performance

The defendant's first contention on appeal is that the trial justice erred in granting plaintiff specific performance of the purchase and sales agreement. We are not persuaded by this contention.

■ In the absence of a legitimate and articulable equitable defense, specific performance is an available remedy when a purchaser of real estate under a written contract demonstrates that he or she was at all times ready and willing to perform the contract. *Thompson*, 762 A.2d at 436; *see also Fracassa*, 876 A.2d at 509. Additionally, specific performance for a real estate contract is an available remedy when a party "unjustifiably refuses or fails to perform under the agreement." *Yates*

*v. Hill*, 761 A.2d 677, 679 (R.I.2000); *see also Lajayi*, 860 A.2d at 686.

In the instant case, the trial justice determined that the parties entered into an agreement providing for the sale of property with a closing to be held on September 1, 2000, but he also noted that the contract contained no "time is of the essence" provision. Additionally, the trial justice found that paragraph ten of the contract allowed plaintiff (buyer), if defendant (seller) were unable to convey marketable title, the option of either (1) accepting the lesser title to the property or (2) having her earnest money returned. The trial justice stated that plaintiff attempted to exercise her right under the first of those options by agreeing to accept whatever title defendant was able to produce upon plaintiff's tender of consideration.

■ In his bench decision, the trial justice recognized that, before he could exercise his discretion and grant specific performance, plaintiff was required to demonstrate (1) that a valid agreement existed and (2) that she was ready, willing, and able to perform. He then concluded that both of those requirements were met. First, the trial justice acknowledged that the existence of a valid and binding agreement was not challenged. Second, the trial justice determined that plaintiff proved by clear and convincing evidence that she was ready, willing, and able to pay the agreed-upon consideration and accept the encumbered title to the property within a reasonable time after the September 1, 2000 closing date. The trial justice explained in some detail that, although the parties never *explicitly* agreed that the closing date was extended, the *de facto* existence of such an extension could be inferred from the conduct of the parties. More specifically, the trial justice pointed to the extensive discussions between the

parties and their agents subsequent to the September 1, 2000 closing date. He took special note of the letter of October 16 from plaintiff's attorney to defendant's attorney expressing plaintiff's desire to exercise her rights under paragraph ten of the purchase and sales agreement.

Furthermore, the trial justice specifically addressed and rejected defendant's contentions to the effect (1) that defendant made an earnest effort to return plaintiff's deposit during September and (2) that the cash sale nature of the transaction created a time mandate. Then, in exercise of this discretion, the trial justice concluded that plaintiff should be granted the equitable remedy of specific performance. We perceive no abuse of discretion in either the trial justice's analysis or in his final decision.

## II

### Admissibility of Expert Testimony

The defendant's second argument on appeal is that the trial justice abused his discretion in allowing a Rhode Island realtor to testify as an expert witness for plaintiff. We are not persuaded by this contention.

The plaintiff proffered the realtor as an expert witness, stating that he would testify that, where there is no "time is of the essence" language, the closing date specified in a purchase and sales agreement is commonly viewed as a target date in the real estate industry and that closings commonly occur a few days after the targeted closing date. The trial justice allowed the realtor to testify during the non-jury trial, ruling that his testimony could be helpful if the trial justice determined that an ambi-

guity existed in the underlying contract. The trial justice stated that he would assess the probative value of the realtor's testimony at the end of the trial.

The realtor in question testified that the absence of a "time is of the essence" provision in the purchase and sales agreement signified that the parties had agreed that the closing could still occur even if it did not take place on the precise date specified in the agreement. He also testified that, when a purchase and sales agreement does not include a "time is of the essence" provision, it is not uncommon for such transactions to close after the targeted closing date. According to the realtor, a closing approximately six weeks after the targeted date, while not common, would not be extraordinary.

Whether or not the trial justice acted within his discretion in allowing the realtor to testify as an expert witness is an intriguing question. However, we need not rule upon that issue in this case. Regardless of whether or not the realtor should have been allowed to testify as an expert witness, there is absolutely no basis for reversal on the ground that he did so testify since the trial justice did not rely upon the testimony of the expert witness when deciding this case. Rather, the trial justice relied solely upon the conduct of the parties to the contract (specifically, the continued communications between the parties and their agents after September 1, 2000) in reaching his conclusion that the parties wished "to extend the closing date to a date within a reasonable period after [September 1, 2000]."[5]

### Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court.

---

5. After making his finding as to the extension issue (without relying on the testimony of the expert witness), the trial justice proceeded to find that Ms. Bucklin was ready, willing, and able to perform her part of the bargain, and he ruled that specific performance was justified in this case.

The record may be remanded to the Superior Court.                                 APPENDIX

## A. HARRY CESARIO
ATTORNEY AT LAW
24 SALT POND ROAD, SUITE C-3
P. O. BOX 449
WAKEFIELD, RI 02880-0449
(401) 783-3318

October 16, 2000

Robert Natal, Esquire
400 Reservoir Avenue
Providence, RI 02907

    **RE:  Estate of Ralph DiCostanzo**
          **Our File No: 3890**

Dear Attorney Natal:

    With regard to the negotiations between our clients for the purchase and sale of property located at 126 Lakedell Drive, Warwick, Rhode Island, I have had extensive discussions with my clients, and they have written to me requesting that I contact you regarding their interests.

    My clients are interested in exercising their option under Paragraph Ten, Subsection (a) of the Purchase and Sale Agreement dated July 6 and 7, 2000. In that paragraph my clients are given the option to accept such title as the seller is able to convey... Please discuss this option exercise with your client and advise as soon as possible when we may close this transaction; otherwise, my clients have advised me that they would enforce their rights of specific performance as a remedy available to them.

    Anxiously awaiting your prompt reply, I remain

               Very truly yours,

               A. Harry Cesario

AHC:ald

CC:  Mr. & Mrs. Allan Bucklin

NO. KC 01-505
DATE 3-9-04
EXHIBIT Pl. f's 2
ANN SHERMAN, DEPUTY CLERK

Full