**GREENSLEEVES, INC.**

v.

**Philip B. SMILEY, Sr., et al.**

No. 2006–107–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 2007.

Joseph R. Palumbo, Jr., Esq., Middletown, for Plaintiff.

Lauren E. Jones, Esq., Providence, for Defendant Friedrich.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Greensleeves, Inc., appeals to this Court from the entry of judgment in favor of the defendant, Eugene W. Friedrich.[1]

This case came before the Court for oral argument on October 1, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this

time. For the reasons set forth below, we affirm in part and vacate in part certain rulings of the Superior Court.

## Facts and Travel

Since 1988, Philip B. Smiley, Sr., had owned six condominium dock slips at Lee's Wharf Marina in Newport, Rhode Island. In 1993, after two unsuccessful attempts to sell his dock slips, Mr. Smiley contacted his real estate broker, Joseph W. Accetta, and asked him to undertake further efforts to obtain a buyer for the dock slips. Mr. Accetta contacted Elizabeth Meyer, the sole shareholder and chief executive officer of Greensleeves, Inc. (Greensleeves), who had previously made a bid for the dock slips. Mr. Accetta and Ms. Meyer entered into negotiations regarding the sale of the dock slips, and those negotiations proved successful.

In a letter to Ms. Meyer's attorney, dated May 24, 1995, Mr. Accetta summarized the negotiated terms whereby Mr. Smiley agreed to sell the dock slips to Greensleeves for $165,000. Mr. Accetta asked Greensleeves' attorney to draft a formal agreement which would incorporate the terms summarized in the May 24 letter. Subsequently, rather than have a more formal agreement drafted, Ms. Meyer and Mr. Smiley agreed to treat the May 24 letter as the purchase and sale agreement, and the closing was set for June 14, 1995.

Then, after Mr. Smiley and Greensleeves agreed to treat the May 24 letter as the purchase and sale agreement, but before the scheduled June 14 closing date, Mr. Friedrich offered Mr. Smiley $175,000 to purchase the same six dock slips. Mr.

---

1. Since plaintiff has dismissed its claims against Philip B. Smiley, Sr., he is not a party to this appeal.

Smiley accepted Mr. Friedrich's offer, and a closing date was set for June 15, 1995.

On June 14, 1995, the original date for the closing with Greensleeves, Mr. Smiley did not close with Greensleeves, and Ms. Meyer was informed that he had entered into a purchase and sale agreement with Mr. Friedrich. The next day, Greensleeves filed suit in the Superior Court for Newport County seeking specific performance of Mr. Smiley's agreement to sell the dock slips to Greensleeves. Greensleeves also filed a notice of *lis pendens* in the land evidence records of the City of Newport. Thereafter, Mr. Friedrich, who had intervened in the Superior Court action,[2] moved to dismiss Greensleeves' complaint. It appears from the record that the hearing justice treated that motion to dismiss as a motion for summary judgment, and on August 11, 1995 he ruled that the May 24 letter did not satisfy the statute of frauds; he therefore granted summary judgment in favor of defendants, reasoning that there was no enforceable contract between Mr. Smiley and Greensleeves. Additionally, the hearing justice granted Mr. Smiley's separate motion to strike the *lis pendens*. On that same day, Mr. Smiley and Mr. Friedrich went forward with their closing on the six dock slips.

On August 23, 1995, Greensleeves filed a notice of appeal, and it also moved in this Court for a stay of the order granting the motion to strike the notice of *lis pendens*. We granted a stay on September 5, 1995. Subsequently, in a decision issued on June 6, 1997, we held that the May 24, 1995 letter contained all of the necessary elements to constitute a contract for the sale of the dock slips, and we vacated the Superior Court's grant of summary judgment. *Greensleeves, Inc. v. Smiley*, 694 A.2d 714, 717 (R.I.1997).

Upon remand to the Superior Court, Greensleeves moved for summary judgment and sought specific performance of its agreement with Mr. Smiley concerning purchase of the dock slips for $165,000. Mr. Smiley and Greensleeves agreed that the May 24 letter constituted the complete agreement between the parties. On February 6, 1998, in view of the agreement of the parties as to the contractual terms, the hearing justice granted specific performance in favor of Greensleeves. The hearing justice also ordered Mr. Friedrich to join in the conveyance of the property to Greensleeves so as to ensure that Greensleeves would obtain clear and marketable title to the six dock slips. Mr. Friedrich appealed to this Court, and on January 15, 1999 this Court issued an unpublished order affirming the ruling of the hearing justice.[3]

Greensleeves then sought to set up a closing with respect to the dock slips, and it also sought an accounting of the rental income from the dock slips that Mr. Friedrich and Mr. Smiley had collected after June 14, 1995 (the date of the originally scheduled closing between Mr. Smiley and Greensleeves). Mr. Smiley and Mr. Friedrich then prepared and provided to Greensleeves an accounting of income and expenses relating to the six dock slips.

On April 14, 2000, a hearing was held to determine what amount of lost income might be due to Greensleeves. The par-

---

2. In a pleading dated July 6, 1995, Greensleeves alleged that Mr. Friedrich had tortiously interfered with its contract.

3. Subsequently, Greensleeves filed a motion with this Court seeking attorneys' fees pursuant to G.L.1956 § 9-1-45; it contended that

Mr. Friedrich's appeal of the Superior Court's February 6, 1998 order had been frivolous. On March 2, 2000, after ruling that Mr. Friedrich's appeal had indeed been frivolous, this Court awarded attorneys' fees in the amount of $450 to Greensleeves.

ties agreed that the relevant time period was from June 14, 1995 through the 1999 boating season, and they stipulated that the net profits earned by Mr. Smiley and Mr. Friedrich during that time period were $61,258.05.[4] The parties also stipulated as to the amount of interest that Greensleeves had earned due to the fact that it had not had occasion to pay the purchase price to Mr. Smiley.

On May 16, 2000, after ruling that this Court's decision in *Bissonnette v. Hanton City Realty Corp.*, 529 A.2d 139 (R.I. 1987),[5] was the controlling precedent, the hearing justice ruled that Greensleeves would not be entitled to the rental profits earned by Mr. Smiley and Mr. Friedrich. That ruling was predicated on the hearing justice's belief that the principles set forth in *Bissonnette* applied to the instant case; on that basis, the hearing justice ruled that the rental profits in question were offset by the interest Greensleeves had earned on the purchase money. In common parlance, the result was a "wash."

Greensleeves then filed a notice of appeal to this Court with respect to the May 16, 2000 order. In the meantime, a closing on the dock slips was held. Greensleeves paid $165,000 to Mr. Friedrich for the dock slips, Mr. Smiley paid $10,000 to Mr. Friedrich, and the dock slips were conveyed to Greensleeves. With respect to Greensleeves' appeal, this Court ruled on February 8, 2002 that the case was not properly before it because several claims remained outstanding. Accordingly, this Court remanded the case to Superior Court for the resolution of all remaining claims before any further appeal by the parties would be entertained.

On January 30, 2006, back in Superior Court,[6] Mr. Smiley and Mr. Friedrich dismissed their cross-claims against each other. Greensleeves dismissed any remaining claims against Mr. Smiley, but it continued to pursue its remaining claim of tortious interference with contract against Mr. Friedrich. Greensleeves argued that the amount of damages to which it would be entitled would be the lost rental profits of $61,258.05. Greensleeves waived its right to a jury trial, and it conceded that it was seeking only the lost rental profits, waiving all other claims for damages from Mr. Friedrich—including any claims for punitive damages or attorneys' fees. The trial justice then addressed the tortious interference claim and ruled that, in light of the May 16, 2000 determination by another justice of the Superior Court that *Bissonnette* was controlling as to the specific performance aspect of the case, the law of the case doctrine[7] required him to hold that Greensleeves was barred from recovering the rental profits as damages.

---

4. During the relevant time period, Mr. Smiley received rental profits of $797.70, and Mr. Friedrich received rental profits of $62,940.20 for a total of $63,737.90. The parties agreed that the total amount of rental profits at issue should be $61,258.05, as a consequence of a downward adjustment made for rental amounts accruing before June 14, 1995.

5. In *Bissonnette v. Hanton City Realty Corp.*, 529 A.2d 139 (R.I.1987), we ruled that, when a court orders specific performance of a contract, the buyer and seller are deemed to have consummated the real estate closing as of the original closing date as set forth in the contract. *Id.* at 143. Accordingly, the purchaser under the contract is entitled to the rents and profits earned between that date and the date of specific performance, and the seller is entitled to the interest earned on the purchase money during the same period. *Id.* Later in this opinion, we further discuss the implications of the holding in *Bissonnette*.

6. Due to its regrettably long pendency in the courts, this case has been presided over by a number of justices of the Superior Court. The Superior Court justice who presided over the case in 2006 had not presided over the case in its earlier stages.

7. "The law of the case doctrine provides that, after a judge has decided an interlocutory

In view of the foregoing considerations, the trial justice ordered that final judgment should be entered in favor of Mr. Friedrich with regard to Greensleeves' remaining claim (*i.e.*, its claim for tortious interference). Final judgment was entered on February 1, 2006, and Greensleeves filed a notice of appeal on February 17, 2006.

### Standard of Review

 It is well settled that "the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Technology Investors v. Town of Westerly,* 689 A.2d 1060, 1062 (R.I.1997); *see also Alix v. Alix,* 497 A.2d 18, 20 (R.I.1985). Where pure questions of law are concerned, however, we conduct a *de novo* review. *Associated Builders Contractors of Rhode Island, Inc. v. Department of Administration,* 787 A.2d 1179, 1184 (R.I.2002).

### Analysis

### I

### The Sufficiency of the Notice of Appeal

 Before us, Mr. Friedrich argues that this Court does not have jurisdiction to hear Greensleeves' appeal because of what he contends are insufficiencies in the notice of appeal. Mr. Friedrich argues that Greensleeves did not comply with Article I, Rule 3(c) of the Supreme Court Rules of Appellate Procedure, which provides in pertinent part that "[t]he notice of appeal * * * shall designate the judgment, order or decree or part thereof appealed from."

In its notice of appeal, Greensleeves expressly indicated that it was appealing from the judgment of February 1, 2006.[8] Mr. Friedrich points out that it is clear from the Rule 12A pre-briefing statement [9] filed by Greensleeves that the plaintiff is actually contesting the May 16, 2000 order and its application of the *Bissonnette* principle. Mr. Friedrich argues that, because Greensleeves did not make explicit reference to the May 16, 2000 order in its notice of appeal, Greensleeves failed to give notice of which order was being appealed as he contends is required under Rule 3(c). We disagree.

The pertinent language of our Rule 3(c) is very similar to the language of Rule 3(c)(1)(B) of the Federal Rules of Appel-

---

matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical matter, should refrain from disturbing the first ruling." *Balletta v. McHale,* 823 A.2d 292, 295 (R.I.2003) (internal quotation marks omitted).

8. The record reveals that Greensleeves filed its notice of appeal on the preprinted form made available by the Superior Court. A copy of that notice of appeal is appended to this opinion. It is completely clear from that document that Greensleeves was appealing from the judgment that had been rendered on February 1, 2006.

The record further reveals that a separate document entitled "Final Judgment" was signed by the trial justice on February 1, 2006.

In other words, the fact that an appeal was being taken from a final judgment should have been instantly obvious to anyone familiar with the record.

9. The *"Statement of the Case"* that is called for by Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure is commonly referred to as a "pre-briefing statement." Rule 12A(1) provides in pertinent part as follows: "[T]he appellant, petitioner, or other moving party shall file a statement of the case and a summary of the issues proposed to be argued * * *."

late Procedure.[10] In interpreting our rules of procedure, this Court has very frequently looked for guidance to the interpretation of comparable federal rules. *See, e.g., Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.,* 891 A.2d 838, 840 (R.I.2006) (looking to federal court decisions for guidance as to how to interpret a Rhode Island Rule of Civil Procedure where the federal counterpart was "substantially similar"); *Smith v. Johns–Manville Corp.,* 489 A.2d 336, 339 (R.I.1985) ("This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule."). Accordingly, in the instant case, we have sought guidance from the decisions of several federal appellate courts as to how Federal Rule 3(c)(1)(B) should be understood.

Time after time, the federal appellate courts have held that an appeal from a final judgment encompasses previous rulings in the case being appealed. *See, e.g., John's Insulation, Inc. v. L. Addison and Associates, Inc.,* 156 F.3d 101, 105 (1st Cir.1998) ("[A] notice of appeal that designates the final judgment encompasses not only that judgment, but also all earlier interlocutory orders that merge in the judgment."); *see also McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1104 (10th Cir.2002) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."); *Greer v. St. Louis Regional Medical Center,* 258 F.3d 843, 846 (8th Cir.2001) (holding that a

notice of appeal that specifies the final judgment brings up for review all of the previous rulings and orders that led up to that final judgment); *Harvey v. Waldron,* 210 F.3d 1008, 1012 (9th Cir.2000) ("An appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment.") (internal quotation marks omitted); *MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1092 (3rd Cir. 1995) (stating that "the appeal of a final judgment draws into question all prior non-final orders and rulings") (internal quotation marks omitted); *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 626 (7th Cir.1993) ("[A]n appeal from a final judgment brings up for review all previous orders entered in the case."); *Cattin v. General Motors Corp.,* 955 F.2d 416, 428 (6th Cir.1992) ("[A]n appeal from a final judgment draws into question all prior non-final rulings and orders."); *see generally* Sup.Ct. R. 4; 16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3949.4 (3d ed.1999 and Supp.2007); 20 James W. Moore et al., *Moore's Federal Practice* § 303.21[3][c] at 303–47–48 (3d ed.2006). Although we are not aware of any opinion of this Court containing a holding that is *explicitly* to the same effect as the holdings in the just-cited federal cases, we now take the opportunity to explicitly hold that, in the words of the First Circuit, "a notice of appeal that designates the final judgment encompasses not only that judgment, but also all earlier interlocutory orders that merge in the judgment." *John's Insulation, Inc.,* 156 F.3d at 105.[11]

---

**10.** Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure provides in pertinent part: "The notice of appeal must: * * * designate the judgment, order, or part thereof being appealed * * *."

**11.** There are some discrete exceptions to the principle that an appeal from a final judgment brings up for appellate review earlier interlocutory orders. *See* 15A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3905.1 (2d ed.1991 and Supp.2007) (indicating, *inter*

It is utterly clear to us that Greensleeves preserved its right to have this Court review the Superior Court's May 16, 2000 ruling that *Bissonnette* barred its tortious interference claim to damages in an amount equal to the lost rental profits in its tortious interference claim. Greensleeves appealed from the final judgment—a judgment that disposed of all remaining claims in the action and that encompasses all prior orders. For this reason, we hold that Greensleeves' notice of appeal was sufficient under our Rules of Appellate Procedure.

Mr. Friedrich has cited to several of our earlier cases, which he contends are supportive of his argument that we do not have jurisdiction to review the May 16, 2000 order: *State v. Hallenbeck*, 878 A.2d 992 (R.I.2005); *Fossa v. Fossa*, 869 A.2d 58 (R.I.2005); *DeLeo v. Anthony A. Nunes, Inc.*, 546 A.2d 1344 (R.I.1988). We have reviewed each of those cases, and we find them to be readily distinguishable from the instant case, which involves a timely appeal from a final judgment. In our estimation, the cited cases have no bearing on our decision today.

There is a separate and independent basis upon which we can be assured that we do have appellate jurisdiction with respect to the *Bissonnette* ruling of May 16, 2000. That second and independent basis is the fact that, on February 1, 2006 (the same date that the trial justice signed the "Final Judgment"), a separate order was signed by the trial justice. That order explicitly indicates that, in view of the law of the case doctrine, the trial justice con-

sidered himself to be bound by the *Bissonnette* ruling that his predecessor had made in the order of May 16, 2000. In other words, even if we prescind from the above-summarized "final judgment" rule, completely adequate notice was provided to Mr. Friedrich.

Greensleeves' intention to appeal the ruling encompassed in the May 16, 2000 order is clear. *See MCI Telecommunications Corp.*, 71 F.3d at 1092 (exercising appellate jurisdiction over orders not specified in the notice of appeal when a connection exists between the specified and unspecified order). This intent is especially clear when viewed in light of Greensleeves' earlier attempt to appeal the May 16, 2000 order, which was dismissed by this Court as premature because partial final judgment had not been entered. *See Williams v. General Motors Corp.*, 656 F.2d 120, 125, 126 (5th Cir.1981) (holding that a notice of appeal that referred only to the final judgment was sufficient to support review of earlier orders, including an order involved in an unsuccessful attempt to take a premature appeal).

Finally, we note that there is virtual unanimity among American appellate courts as to the pragmatic approach to be taken with respect to the adequacy of a notice of appeal.[12] *See, e.g., Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (holding that courts should "liberally construe the requirements of Rule 3"); *Sanabria v. United States*, 437 U.S. 54, 67 n. 21, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) ("A mistake in designating the judgment appealed from is not

---

*alia,* that a pretrial order denying summary judgment is not ordinarily reviewable once a trial has been held); *see also Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994). However, none of those discrete exceptions is pertinent to the instant case.

**12.** It is noteworthy that the introductory language that serves as a preface to this Court's Rules of Appellate Procedure states that the rules are to be construed so as "to promote the just, speedy and inexpensive determination of every matter that comes before the Supreme Court."

always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced."); *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.") (internal quotation marks omitted); *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 225, n. 6 (3rd Cir.2007) (holding that "technical inadequacy" in the notice of appeal did not deprive the court of jurisdiction); *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260 (11th Cir.2006) (noting that liberal construction of the rule "has resulted in the liberal allowance of appeals from orders not expressly designated in the notice of appeal, at least where the order that was not designated was entered prior to or contemporaneously with the order(s) properly designated in the notice of appeal") (internal quotation marks omitted); *Town of Norwood v. New England Power Co.*, 202 F.3d 408, 415 (1st Cir.2000) (stating that because the "failure to name the underlying judgment is usually a slip of the pen and rarely causes any prejudice to the other side," courts often "rescue the technically defaulted portion of the appeal"); *Campbell v. Wainwright*, 726 F.2d 702, 704 (11th Cir.1984) (asserting that it liberally construes the notice of appeal in favor of the appellant "where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no

prejudice to the adverse party"); *Committee for Open Media v. F.C.C.*, 543 F.2d 861, 865 (D.C.Cir.1976) ("[T]echnical niceties are to be disregarded when the appellant's purpose may fairly be inferred and the appellee is not prejudicially misled."). In the instant case, however, we need not rely upon the pragmatic attitude which the just-cited cases reflect. For the reasons set forth above, we have no doubt as to our appellate jurisdiction with respect to the important and complex substantive issue that has haunted this case for many years—*viz.*, the extent of the applicability of the *Bissonnette* rule. Accordingly, we now proceed to address that issue.

## II

### Applicability of *Bissonnette* in the Specific Performance Context[13]

Under *Bissonnette*, when a court orders specific performance of a contract,[14] "the decree must as nearly as possible order [the contract] to be performed according to its terms, and one of those terms is the date fixed by it for its completion." *Bissonnette*, 529 A.2d at 143 (internal quotation marks omitted). Thus, when a court orders specific performance of a contract, the buyer and seller are deemed to have consummated the real estate closing as of the original closing date as set forth in the contract. *Id.* Accordingly, the purchaser under the contract is entitled to the rents and profits earned between that date and the date of specific performance, and the seller is entitled to the interest earned on the purchase money during the

---

13. *Bissonnette v. Hanton City Realty Corp.*, 529 A.2d 139 (R.I.1987).

14. The remedy of specific performance is available when a purchaser of real estate under a written contract demonstrates that he or she was at all times ready and willing to perform the contract. *Bucklin v. Morelli*, 912 A.2d 931, 936 (R.I.2007); *see also Fracassa v. Doris*, 876 A.2d 506, 509 (R.I.2005). Specific performance may also be a remedy when a party "unjustifiably refuses or fails to perform under the agreement." *Yates v. Hill*, 761 A.2d 677, 679 (R.I.2000).

same period. *Id.* When, however, the seller is the cause of the delay in performing the contract, any accrued interest that exceeds the lost rental profits may not be recovered by the seller. *Id.* In such a situation, the transaction is a "wash" in which neither the buyer nor the seller receives anything for lost rents or interest on the purchase money. *See id.*

 The underlying justification for the *Bissonnette* rule is that it puts the original seller and the original buyer in the same position that they would have been in had the sale taken place on the original closing date. Greensleeves contends that, because Mr. Friedrich was not a party to the original contract between it and Mr. Smiley, Mr. Friedrich should not have received the benefit of the *Bissonnette* rule in the specific performance context. We disagree. Mr. Friedrich was a bona fide purchaser of the six Newport dock slips and thus was entitled to have his rental income offset by the interest on the unpaid purchase price in an accounting under *Bissonnette.*

Mr. Friedrich and Mr. Smiley held the closing on the dock slips *after* the Superior Court had ruled that there was no enforceable contract between Mr. Smiley and Greensleeves and *after* that court granted the motion to strike the *lis pendens.* The closing took place *before* Greensleeves appealed the order and *before* this Court issued a stay on the motion to strike the *lis pendens.* Thus, at the time of the closing, there were no legal impediments, and Mr. Friedrich, as a bona fide purchaser, was entitled to the benefits of the *Bissonnette* rule in the context of the decree of specific performance.

## III

### Damages Under the Tortious Interference Claim

 With respect to Greensleeves' tortious interference with contract claim, however, we do not agree with Mr. Friedrich's contention that Greensleeves is precluded from seeking the lost rental profits. Although the *Bissonnette* principle was properly applied in the specific performance aspect of this case, that principle would not bar Greensleeves from recovering the lost rental profits if it should prevail in its tortious interference claim. Our opinion in *Bissonnette* expressly indicates that compensation awarded incident to a decree for specific performance is *"more like an accounting between the parties than an assessment of damages."* *Bissonnette,* 529 A.2d at 143 (emphasis added); *see also* Annotation, *Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land,* 7 A.L.R.2d 1204, 1206 (1949).[15]

 By contrast, it is self-evident that the remaining claim in this case (tortious interference with contract) sounds in *tort.*[16] The contract/specific performance

---

15. In seeking the remedy of specific performance, the wronged party affirms that there is a contract and asks the court to order its performance. A plaintiff may not be awarded both a decree for specific performance and also damages for breach of contract. *See* Annotation, *Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land,* 7 A.L.R.2d 1204, 1206 (1949).

16. A prima facie case of tortious interference with contract requires the aggrieved party to show "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." *Belliveau Building Corp. v. O'Coin,* 763 A.2d 622, 627 (R.I.2000) (internal quotation marks omitted). The aggrieved party must also show that the alleged wrongdoer acted with legal malice—i.e., that the tortfeasor intended to do harm to the contractual relationship

rule articulated in *Bissonnette* is not pertinent in this context, where traditional principles of tort law hold sway.[17]

Although we are holding that Greensleeves remains free to prove liability and to seek damages under its tortious interference theory untroubled by the *Bissonnette* case and the accounting principle that it articulates, it should not be inferred that we are departing from the general prohibition against double recovery.[18] The facts before us present a particular set of circumstances under which, once a party has been restored to its rightful position under a contract, it is permitted to seek recovery from a third party that allegedly tortiously interfered with that contract. The accounting principle articulated in *Bissonnette* was properly applied to the breach of contract (specific performance) phase of this case, but we perceive no reason why it should bar either Green-

sleeves' claim that Mr. Friedrich tortiously interfered or its pursuit of damages for that tort. Those issues remain to be litigated free from the *Bissonnette* cloud.

## Conclusion

For the reasons set forth herein, we affirm the ruling of the Superior Court that our opinion in *Bissonnette* constituted the controlling precedent with respect to the contractual (accounting) aspects of this case. With respect to the plaintiff's tortious interference claim, however, we vacate the ruling of the Superior Court that the *Bissonnette* rule precludes the plaintiff from pursuing that claim; the plaintiff is free to seek to establish liability and damages under that cause of action.[19] The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.

---

without any legally recognized privilege or justification. *Id.*

17. In other words, the accounting in the context of the specific performance decree does not result in there being an offset with respect to any potential damages in tort.

18. *See Graff v. Motta*, 695 A.2d 486, 492 (R.I.1997) ("A plaintiff's recovery against a defendant under one tort theory precludes any duplicative recovery for the same damages under some other tort theory.") (internal quotation marks omitted); *see also Vallinoto v. DiSandro*, 688 A.2d 830, 842–43 (R.I. 1997).

19. It appears to us that this case has taken on a life of its own; we can perceive no sufficient reason why this particular litigation did not come to an end long ago. We see real similarities between this case and the fictional case of *Jarndyce v. Jarndyce,* which Charles Dickens so memorably and mordantly satirized in *Bleak House.*

We find the long pendency of this case to be truly regrettable, and we earnestly encourage the parties and their attorneys to make every effort to dispose of the remaining bone of contention at this time by engaging in meaningful settlement negotiations. As always, this Court's mediation office stands ready to be of assistance in this regard.

### STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## NOTICE OF APPEAL

☒ SUPERIOR COURT ☐ FAMILY COURT ☐ DISTRICT COURT

_____NEWPORT_____ COUNTY/DIVISION

| | |
|---|---|
| 1 GREENSLEEVES, INC.<br><br>VS.<br><br>PHILIP B. SMILEY and EUGENE FRIEDRICH | 2. CASE NO.<br><br>NC 1995-0262 |

3. Joseph R. Palumbo, Jr., #0405 Lauren E. Jones George Prescott, Sr.
Attorney for Plaintiff Attorney for Defendant

| June 1995 | February 1, 2006 | February 14, 2006 |
|---|---|---|
| Date Case First Filed<br>in Lower Court/Agency | Date of Judgment/Order<br>Appealed From | Date Appeal Filed |

PARTY FILING APPEAL
☒ Plaintiff ☐ Petitioner Trial Court Judge Indeglia, J.
☐ Defendant ☐ Respondent

---

4. TRIAL COURT ACTION APPEALED

| | | | | | |
|---|---|---|---|---|---|
| ☐ IPR | Preliminary Injunction | ☒ CJJ | Jugment/Judge | ☐ DPC | Denial Post Conviction |
| ☐ CON | Conviction | ☐ CDV | Directed Verdict | ☐ MTR | Denial Sent. Reduction |
| ☐ IPT | Permanent Injunction | ☐ CJU | Judgment/Jury | ☐ DCF | Dependency/Termination |
| ☐ CJD | Default Judgment | ☐ DAL | Alimony | ☐ DSJ | Summary Judgment |
| ☐ CDS | Dismissal/Jurisdiction | ☐ PRO | Probation Viol. | ☐ ASF | Agreed Statement of Facts |
| ☐ CDM | Dismissal Merits | ☐ PTM | Pre Trial Motion | ☐ DRP | Original Divorce Petition |
| ☐ CTO | New Trial Motion Denied | ☐ FCJ | Juvenile | ☐ CUS | Custody |
| ☐ CTG | New Trial Motion Granted | ☐ PCR | Grant Post Conviction | | |

STAGE OF PROCEEDINGS
☐ Pre Trial
☐ During Trial
☐ Post Trial

CIVIL DAMAGES
☐ Amount of Judgment $_____
☒ Denied
☐ Granted

JUDGMENT
☐ Plaintiff
☒ Defendant
☐ Other

SENTENCES
☐ Confinement ☐ Suspended
☐ Special Program ☐ Probation
☐ Fine/Restitution ☐ Deferred

TRIAL TYPES
☒ Judge
☐ Jury
☐ Appeal from Post-Conviction Relief

BAIL/RELEASE STATUS
☐ Personal Recognizance ☐ Surety Bond ☐ Cash Bond
☐ Held Without Bail ☐ Other_____ ☐ Held in Lieu of Bail

---

5. TRANSCRIPT STATUS
☒ Transcript Will Not Be Ordered Filing Fee Required ☒ Yes ☐ No Trial Court
☐ Transcript Will Be Ordered* Appeal Filing Fee: $150.00 Receipt No._____

Estimated Cost $_____ Court Reporter

---

2/13/06 Joseph R. Palumbo, Jr., #0405 _____ _____
DATE FILING ATTORNEY(Print) REGISTRATION NO. SIGNATURE
*Pursuant to Rule 10 of the Rules of the Supreme Court, the appellant shall within 10 days "order from the court reporter
a transcript of such parts of the proceeding not already on file as he deems necessary for inclusion in the record."

HENRY S. KINCH JR., CLERK
DISTRIBUTION
WHITE – TRIAL COURT, YELLOW – OPPOSING ATTORNEY(S), PINK – SUPREME COURT

SE-10 (Rev. 11/89)